O

# United States District Court
# Central District of California

| | |
|---|---|
| CS ANAHEIM HOTEL INVESTMENTS LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CHOICE HOTELS INTERNATIONAL, INC.,<br><br>　　　　Defendant. | Case № 8:24-cv-02131-ODW (ADSx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION [15]** |

## I.　INTRODUCTION

Plaintiff CS Anaheim Hotel Investments LLC ("CS Anaheim") brings this action concerning a franchise dispute against Defendant Choice Hotels International, Inc. ("Choice"). (Compl., ECF No. 1.) Choice now moves to compel arbitration. (Mot. Compel Arb. ("Motion" or "Mot."), ECF No. 15.) For the reasons below, the Court **GRANTS** Choice's Motion.[1]

## II.　BACKGROUND

Choice is a hotel franchisor that owns more than twenty brands and grants hotel franchisees the right to use its brands. (Compl. ¶¶ 33–35.) Curtis Olson, the indirect

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

|   |   |
|---|---|
| 1 | controlling member and sole manager of CS Anaheim, is the owner and CEO of |
| 2 | Nexus Companies ("Nexus"). (*Id.* ¶ 37.) Olson and Nexus executives develop and |
| 3 | own hotels operating under franchisor-licensed brands. (*Id.* ¶¶ 38–39.) On April 15, |
| 4 | 2016, CS Anaheim and Choice entered into a Franchise Agreement, under which CS |
| 5 | Anaheim agreed to and does operate a hotel under Choice's Cambria hotels & suites |
| 6 | brand (the "Hotel"). (Decl. Jeff Gross ISO Mot. ("Gross Decl.") ¶ 10, Ex. A |
| 7 | ("Franchise Agreement" or "FA"), ECF No. 15-1.) |
| 8 | Prior to entering into the Franchise Agreement, Choice provided CS Anaheim a |
| 9 | Financial Disclosure Document ("FDD"), including an addendum (the "Addendum") |
| 10 | for the State of California. (Decl. Cory W. Alder ISO Opp'n ("Alder Decl.") ¶ 10, |
| 11 | ECF No. 19-2; Gross Decl. ¶ 5, Ex. B at 34–109 ("FDD"), Ex. B at 110–11 |
| 12 | ("Addendum"), ECF No. 15-1.) The Addendum states, among other things, that |
| 13 | "[t]he Franchise Agreement requires venue to be limited in Maryland. This provision |
| 14 | may not be enforceable under California law." (Addendum ¶ 17.4.) |
| 15 | Before executing the Franchise Agreement, Olson, Nexus, and its executives |
| 16 | conducted "a thorough due diligence process," including reviewing the FDD and |
| 17 | negotiating the terms of the Franchise Agreement. (Alder ¶ 13.) Choice initially |
| 18 | presented CS Anaheim "with a standardized form contract, consisting of twenty-eight |
| 19 | single-spaced pages," which ultimately became the Franchise Agreement. (*Id.* ¶ 29.) |
| 20 | Although the parties negotiated deal- and project- specific provisions, (*id.* ¶ 34; Gross |
| 21 | Decl. ¶¶ 8–9), they did not negotiate the arbitration clause, (Alder ¶ 32). According to |
| 22 | a Nexus executive, besides "certain deal- or project-specific provisions, the |
| 23 | [F]ranchise [A]gremeent was offered on a take it or leave it basis." (*Id.* ¶ 35.) |
| 24 | The Franchise Agreement has a provision that, excluding certain intellectual |
| 25 | property claims, requires arbitration of "any controversy or claim arising out of or |
| 26 | relating to th[e] Agreement . . . including any claim that th[e] Agreement or any part |
| 27 | of th[e] Agreement or any related agreements is invalid, illegal, or otherwise voidable |
| 28 | or void." (FA § 21.) Such claims must "be sent to final and binding arbitration in the |

state of Maryland," and the arbitrator must apply "the substantive laws of Maryland, without reference to its conflict of laws provision." (*Id.*)  Thus, this arbitration provision includes a delegation clause and a forum selection clause.

In December 2019, CS Anaheim opened the Hotel. (Compl. ¶¶ 48–49.) In late 2023, CS Anaheim discovered that Choice was not complying with its obligations under the Franchise Agreement. (*Id.* ¶ 59.) For instance, under the Franchise Agreement, CS Anaheim is required to buy certain products from Choice's chosen qualified vendors. (*Id.* ¶¶ 66–67.) Choice represented that it would only limit the number of qualified vendors if such vendors provided franchisees with certain benefits, including volume-discounted pricing. (*Id.*) However, Choice limits the number of qualified vendors in exchange for kickbacks from those vendors. (*Id.* ¶ 83.) Qualified vendors pass on the cost of the kickbacks to franchisees, leading to franchisees like CS Anaheim paying above-market prices for goods and services. (*Id.* ¶¶ 78–83, 86.) Choice's kickback scheme caused CS Anaheim to spend millions of dollars on goods and services from qualified vendors without the benefit of Choice's promised volume-discounted pricing. (*Id.* ¶ 104.) CS Anaheim also alleges that Choice improperly uses system fees that CS Anaheim pays to fund Choice's own business development activities, when those system fees should have been spent on marketing and advertising. (*Id.* ¶ 119.) Finally, CS Anaheim claims that Choice has charged fees not previously disclosed and failed to provide adequate systems in violation of the Franchise Agreement. (*Id.* ¶¶ 134, 143.)

Based on these allegations, CS Anaheim brings claims for breach of contract and of the implied covenant of good faith and fair dealing and fraud. (*Id.* ¶¶ 156–78.) CS Anaheim also seeks declaratory judgment that it may terminate the Franchise Agreement without paying liquidated damages. (*Id.* ¶¶ 179–84.) Choice now moves

the Court to compel arbitration and stay the case pending completion of arbitration. (Mot.)  The Motion is fully briefed.  (Opp'n, ECF No. 19; Reply, ECF No. 20.)[2]

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") is meant to "ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (alteration in original).  Section 2 of the FAA creates a policy favoring enforcement, stating that arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting 9 U.S.C. § 2).  Under the FAA, a party to such an agreement may petition an appropriate federal district court to compel arbitration.  9 U.S.C. § 4.

The FAA governs a contract dispute relating to an arbitration provision if the contract affects interstate commerce.  *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995).  When it applies, the FAA restricts a court's arbitration inquiry to two threshold questions: (1) whether there was an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.  *Cox*, 533 F.3d at 1119.  A delegation provision further limits a court's review by assigning these gateway questions to an arbitrator.  *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023).  If an arbitration agreement contains a delegation provision, a party opposing arbitration must specifically challenge the delegation provision.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010).  If the party fails to do so, a court must treat the provision as valid, order arbitration and leave "any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.*  The FAA "permits

---

[2] Eleven days after Choice filed its Reply and three days after the Court took the matter under submission, CS Anaheim sought leave to file a sur-reply.  (Mot. Sur-Reply, ECF No. 25.)  The Court denied the request, ruling that "additional briefing [is] unnecessary for decision on the Motion." (Order Den. Mot. Sur-Reply, ECF No. 27.)  As discussed in this Order, the issue CS Anaheim sought to address—which law the Court should apply, (Mot. Sur-Reply 2)—is not dispositive.

agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339.

## IV.   DISCUSSION

Based on the Franchise Agreement's arbitration and delegation provisions, (FA § 21), Choice asks the court to compel arbitration and stay the case. (Mot.). CS Anaheim does not contest that the Franchise Agreement contains arbitration and delegation provisions. (*See* Opp'n.) Instead, CS Anaheim argues that these provisions are unenforceable because the forum selection clause is unenforceable, the delegation clause is unconscionable, and the arbitration clause in its entirety is unconscionable. (Opp'n 5–26.) Before turning to these arguments, the Court first considers the parties' disagreement as to what state's law to apply.

### A.   Choice of Law

As a threshold issue, the parties argue over which law the Court must apply. Choice contends that the Franchise Agreement calls for the Court to apply Maryland law. (Opp'n 9 n.4; *see* FA § 20.f ("The Agreement . . . will be interpreted under the substantive laws of Maryland, not including its conflict of laws provisions or such provisions of any other jurisdiction . . . .").) CS Anaheim argues that this choice-of-law provision is unenforceable and the Court must apply California law.[3]

In its opposition brief, CS Anaheim does not cite any Maryland law or contest that if Maryland law governed, the Court must compel arbitration. (*See* Opp'n.) In fact, CS Anaheim admits that it "did not address why the arbitration clause is

---

[3] In opposing Choice's argument for Maryland law, CS Anaheim does not specifically reference the choice-of-law provision in section 20 of the Franchise Agreement. (*See* Opp'n.) Rather, CS Anaheim argues against the choice-of-law provision in section 21, the arbitration provision, which requires the arbitrator to apply Maryland law. (*Id.* at 23–25.) However, CS Anaheim's arguments apply equally to both choice-of-law provisions, in sections 20 and 21. As CS Anaheim cites only California law, the Court construes CS Anaheim as arguing which law the Court should apply to the Motion.

unenforceable under Maryland law." (Mot. Sur-Reply ¶ 1.) CS Anaheim only argues that the delegation and arbitration clauses are unenforceable under *California* law. (*See* Opp'n; Mot. Sur-Reply.) Therefore, if Maryland law applies, the Court must compel arbitration here. *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (holding that opposing party waives arguments by not raising them in an opposition); *Lloyd v. Niceta*, 255 Md. App. 663, 686 (2022), *aff'd*, 485 Md. 422 (2023) ("The burden of establishing [unconscionability] is on the party challenging the . . . agreement." (second alteration in original)). As the Court determines that the Franchise Agreement's delegation clause is also enforceable under California law, the Court need not resolve the parties' dispute over which law applies. Either way, the outcome is the same—CS Anaheim must arbitrate its claims against Choice.

**B.    Mutuality**

CS Anaheim argues that the Court cannot compel arbitration because the arbitration clause is unenforceable for lack of mutuality. (Opp'n 8–11.) The Franchise Agreement states that applicable claims "will be sent to final and binding arbitration in the state of Maryland." (FA § 21.) CS Anaheim acknowledges this, (*see* Opp'n 8), but argues that the parties did not mutually agree to a Maryland forum because the Addendum warns that the forum selection "provision may not be enforceable under California law," (Addendum ¶ 17.4; *see* Opp'n 8–9). CS Anaheim contends that this lack of mutuality as to the forum selection clause extends to the arbitration clause as a whole, including the delegation clause. (Opp'n 9–11.) That the lack of mutuality over the forum invalidates the delegation clause is essential to CS Anaheim's argument because, as discussed above, if the delegation clause is enforceable, the Court must compel arbitration without addressing the enforceability of the Franchise Agreement's other terms. *See Rent-A-Center*, 561 U.S. at 72. CS Anaheim relies primarily on three cases for its argument.

First, in *Laxmi*, the franchise agreement circular required under California law disclosed, "The [f]ranchise [a]greement also requires binding arbitration. The

arbitration will occur in Oklahoma County, State of Oklahoma . . . This provision may not be enforceable under California law." *Laxmi Invs., LLC v. Golf USA*, 193 F.3d 1095, 1096 (9th Cir. 1999) (third alteration in original). The franchise agreement itself stated that all arbitration must be done in Oklahoma. *Id.* Because of the franchisor's warning in the circular that the forum selection provision "may not be enforceable under California law," the Ninth Circuit concluded that the parties did not have a meeting of the minds that the arbitration take place in Oklahoma and remanded to the district court to compel arbitration in California. *Id.* at 1096, 1098.

Next, nearly a decade later, in *Winter*, the California Court of Appeal examined a nearly identical franchise agreement circular, which stated, "The franchise agreement requires binding arbitration. The arbitration will occur at Dallas County, Texas with the costs being borne by the losing party. This provision may not be enforceable under California law." *Winter v. Window Fashions Pros., Inc.*, 166 Cal. App. 4th 943, 946 (2008). There, the court extended *Laxmi*'s holding and found no mutual assent as to the *entire* arbitration clause, not just the forum selection clause. *Id.* at 950–51.

Last, more than a decade after *Winter*, in an unpublished opinion of a divided panel, the Ninth Circuit in *Nygaard* rejected a defendant's argument that a lack of mutual assent as to the forum meant that only the forum selection clause was unenforceable, and that the lack of mutual assent did not reach the entire arbitration provision. *Nygaard v. Prop. Damage Appraisers, Inc. (Nygaard II)*, 779 F. App'x 474, 476 (9th Cir. 2019). In ruling that the parties' absence of mutual assent as to the forum selection clause invalidated the entire arbitration clause, the Ninth Circuit held that it was bound by *Winter*. *Nygaard II*, 779 F. App'x 474 at 476.

However, the Addendum in this case differs in a critical way to the circulars in *Laxmi*, *Winter*, and *Nygaard*. In those cases, the relevant clause in the circular explicitly referenced arbitration. *See Laxmi*, 193 F.3d at 1096 ("*The Franchise Agreement also requires binding arbitration*. The arbitration will occur in Oklahoma

County, State of Oklahoma . . . This provision may not be enforceable under California law." (emphasis added)); *Winter*, 166 Cal. App. 4th at 946 ("*The franchise agreement requires binding arbitration.* The arbitration will occur at Dallas County, Texas with the costs being borne by the losing party. This provision may not be enforceable under California law." (emphasis added)); *Nygaard v. Prop. Damage Appraisers, Inc. (Nygaard I)*, No. 16-cv-02184-VC, 2017 WL 8793228, at *2 (E.D. Cal. Dec. 28, 2017), *aff'd*, 779 F. App'x 474 (9th Cir. 2019) ("[1] *The Agreement requires binding arbitration. [2] The arbitration will occur . . .* in Fort Worth, Texas, before a sole arbitrator . . . [3] This provision may not be enforceable under California law." (number alterations in original) (emphasis added)). As the district court in *Nygaard I* held, where the disclosure explicitly referenced arbitration, "the best reading of th[e] paragraph is one in which '[t]his provision' refers to the arbitration provision in its entirety, not merely one aspect of it." 2017 WL 8793228, at *2 (alteration in original).

Here, in contrast to CS Anaheim's cases, the disclosure about enforceability of the forum selection provision does not even mention arbitration. Rather, the Addendum states, "The Franchise Agreement requires venue to be limited to Maryland. This provision may not be enforceable under California law." (Addendum ¶ 17.4.) Unlike in *Laxmi*, *Winter*, and *Nygaard*, there can be no ambiguity that the Addendum's "[t]his provision" refers to the forum selection requirement only, and not the entire arbitration provision. *See Streedharan v. Stanley Indus. & Auto., LLC (Streedharan I)*, 630 F. Supp. 3d 1244, 1266–67 (C.D. Cal. 2022) (distinguishing *Winter* and *Nygaard* on similar basis), *rev'd on other grounds*, No. 22-55999, 2023 WL 9067587 (9th Cir. Jan. 4, 2023).[4] Therefore, even if the parties did not mutually agree to the selected forum, they did mutually assent to the remainder of the

---

[4] In an unpublished opinion, the Ninth Circuit affirmed *Streedharan I*'s finding of mutual assent as to the arbitration clause on other grounds. *Streedharan v. Stanley Indus. & Auto., LLC (Streedharan II)*, No. 22-55999, 2023 WL 9067587, at *1 (9th Cir. Jan. 4, 2023). Under *Streedharan II*'s alternative reasoning, the result would be the same—the parties assented to the arbitration clause.

1  arbitration provision. Accordingly, to the extent the forum selection clause is not
2  enforceable, it does not invalidate the remainder of the arbitration provision.[5]

3  CS Anaheim argues that this Court should invalidate the entire arbitration
4  clause because to do otherwise would be "at odds with" *Salinas v. Cornwell Quality*
5  *Tools Co.*, No. 5:19-cv-02275-JGB (SPx), 2020 WL 4258788 (C.D. Cal. Mar. 20,
6  2020). (Opp'n 10.) But that case concerned a disclosure similar to the ones in *Laxmi*,
7  *Winter*, and *Nygaard*, not like the one here. *See Salinas*, 2020 WL 4258788, at *3
8  ("*The Franchise Agreement requires binding arbitration. The arbitration* will occur at
9  the location that you and Cornwell agree, or, in the absence of any agreement, in
10 Akron, Ohio. . . . This provision may not be enforceable under California law."
11 (emphasis added)). Therefore, *Salinas* does not conflict with the Court's conclusion
12 above, that any lack of mutuality as to the *forum* does not extend to the arbitration
13 clause as a whole.

14 Accordingly, the Court finds that even if the forum selection provision is
15 unenforceable, it does not invalidate the entire arbitration clause.

16 **C.   Unconscionability**

17 Choice argues the Court must compel arbitration because the Franchise
18 Agreement contains a delegation clause that delegates the question of arbitrability to
19 the arbitrator in the first instance. (Mot. 15–17.) CS Anaheim does not contest the
20 presence of the delegation clause and instead contends the delegation clause is
21 unenforceable as it is unconscionable. (Opp'n 5–7.)

---

[5] While not necessary to its analysis, the Court notes that section 20.a of the Franchise Agreement contains a severability clause that sates:

> If any section of this Agreement is held to be illegal, invalid or unenforceable, both parties agree that (i) the section will be removed; (ii) this Agreement will be understood and enforced as if the illegal, invalid, or unenforceable section had never been in this Agreement; and (iii) the remaining sections will remain in full force and effect and will not be affected by the illegal, invalid, or unenforceable section or by its removal. A section similar to the removed section will be automatically added as a part of this Agreement to the maximum extent enforceable.

"Because a court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement *to delegate* arbitrability . . . is itself unconscionable." *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015). In such circumstances, a party challenging the enforceability of the delegation provision must specifically argue that the delegation clause itself is unenforceable, as opposed to the arbitration provision as a whole. *Rent-A-Center*, 561 U.S. at 71. CS Anaheim challenges the delegation clause in particular. (Opp'n 5–7.) Therefore, because CS Anaheim "specifically challenges the delegation provision," the Court "must consider the challenge before ordering compliance." *Bielski*, 87 F.4th at 1009. "[C]onsidering the delegation provision in context," the Court "evaluate[s] whether it is unconscionable." *Id.* at 1013.

Under California law, "[u]nconscionability has both a procedural and a substantive element." *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 492 (2024). Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Id.* (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev., LLC*, 55 Cal. 4th 223, 246 (2012)). Substantive unconscionability focuses on whether the contract's terms are "unfair" or "one-sided." *Id.* at 493. "Both procedural and substantive elements must be present to conclude a term is unconscionable, but these required elements need not be present to the same degree." *Id.* Instead, "[c]ourts apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (second alteration in original) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.* at 495 (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245

(2016)). "The party resisting enforcement of an arbitration agreement has the burden to establish unconscionability." *Id.* at 492.

CS Anaheim argues that the delegation clause is procedurally unconscionable because Choice offered the clause on a take-it-or-leave-it basis. (Opp'n 6.) "Where a franchise agreement is a contract of adhesion, courts have found "minimal procedural unconscionability." *Smith v. Paul Green Sch. of Rock Music Franchising, LLC*, No. 08-cv-00888-DDP (MANx), 2008 WL 2037721, at *3 (C.D. Cal. May 5, 2008); *see Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1284 (9th Cir. 2006) (noting that defendant had "overwhelming bargaining power, drafted the contract, and presented it to [plaintiff] on a take-it-or-leave-it basis" amounted to only minimal evidence of procedural unconscionability). Therefore, even if the Franchise Agreement is an adhesion contract, there would be, at most, minimal procedural unconscionability. The Court need not reach this issue because, as discussed below, CS Anaheim fails to show the delegation clause is substantively unconscionable. *See Ramirez*, 16 Cal. 5th at 492 ("Both procedural and substantive elements must be present to conclude a term is unconscionable . . . .").

CS Anaheim asserts that the delegation clause is substantively unconscionable for two reasons: (1) there was no "meeting of the minds as to venue," so the parties "have not agreed on what arbitrator will decide" arbitrability, and (2) "the arbitrator is precluded from applying California unconscionability standards." (Opp'n 6.)

As to the first issue, the Court has already concluded that, even if there was no meeting of the minds as to forum, that does not invalidate the arbitration provision. Further, if the forum selection clause is unenforceable, then it is not part of the Franchise Agreement and should not be considered in determining whether the delegation clause is unconscionable. *See Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001) (explaining that there can be no unconscionability defense if there was no mutual assent because a finding of unconscionability "presupposes an existing contract"). Accordingly, CS Anaheim's

11

argument that the delegation clause is unconscionable due to lack of mutual assent as to the forum fails.

As to the second argument, CS Anaheim contends the delegation clause is unconscionable because it prohibits the arbitrator from applying California unconscionability standards. (Opp'n 6–7.) In support, CS Anaheim relies on the California Court of Appeal's decision in *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227 (2015), which concerned claims California employees brought against their employer. (*Id.*) There, the arbitration agreement had a delegation clause that delegated questions of the agreement's enforceability to the arbitrator. *Pinela*, 238 Cal. App. 4th at 240. It also had a choice of law provision that provided:

> This Agreement shall be construed, governed by, and enforced in accordance with the laws of the State of Texas (except where specifically stated otherwise herein), except that for claims or defenses arising under federal law, the arbitrator shall follow the substantive law as set forth by the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit. *The arbitrator does not have the authority to enlarge, add to, subtract from, disregard, or . . . otherwise alter the parties' rights under such laws, except to the extent set forth herein*. The parties recognize that [Neiman Marcus Group] operates in many states in interstate commerce. Therefore, it is acknowledged and agreed that the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, shall govern this Agreement and the arbitration.

*Id.* at 243–44 (first alteration in original). In holding that the delegation provision was substantively unconscionable, the *Pinela* court found that the agreement's choice of law provision did not allow the arbitrator to "(1) apply California law to determine whether the Agreement is unconscionable, or even (2) limit the application of the choice of law provision to the extent necessary to prevent substantial injustice, as California law would require." *Id.* at 248.

CS Anaheim argues that the Franchise Agreement has the same problem as the agreement in *Pinela*. (Opp'n 6–7.) But the Franchise Agreement's choice of law clause is nothing like the one in *Pinela* and does not prevent an arbitrator from

applying California unconscionability law. In *Pinela*, in finding the clause unconscionable, the court relied on the language of the agreement that "states the arbitrator would not have authority to alter the rights the parties have under Texas law." *Pinela*, 238 Cal. App. 4th at 248. This language is absent from the Franchise Agreement. (*See* FA.) The Court joins other courts that have declined to expand *Pinela* outside of its context; CS Anaheim "is free to argue in arbitration that California law applies and renders the choice-of-law or any other provision unconscionable." *Rodrigue v. Ctr. for the Advancement of Sci. in Space, Inc.*, No. 5:22-cv-00485-SB (KKx), 2022 WL 3012214, at *4 (C.D. Cal. May 10, 2022); *see e.g.*, *Gountoumas v. Giaran, Inc.*, No. 18-cv-07720-JFW (PJWx), 2018 WL 6930761, at *9 (C.D. Cal. Nov. 21, 2018) ("[A]s this Court would be required to do if [p]laintiff's claims remained in this Court, the arbitrator will be required to conduct the choice-of-law analysis."); *Wainwright v. Melaleuca*, No. 2:19-cv-02330-JAM-DB, 2020 WL 417546, at *6 (E.D. Cal. Jan. 24, 2020), *aff'd*, 844 F. App'x 958 (9th Cir. 2021) (explaining that *Pinela*'s choice-of-law provision "materially differs from the one at issue here," because the *Pinela* agreement "not only set forth a choice-of-law, but also prohibited the arbitrator from finding that choice unenforceable"). Accordingly, CS Anaheim's argument that the delegation clause is unconscionable because the arbitrator cannot apply California unconscionability laws fails.

CS Anaheim fails to show substantive unconscionability, so, as noted, the Court need not consider CS Anaheim's arguments as to procedural unconscionability. *See Ramirez*, 16 Cal. 5th at 492. As the delegation clause is enforceable, the enforceability of the arbitration provision is a question for the arbitrator. *See Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1201 (9th Cir. 2024) (rejecting challenge to delegation provision and leaving remaining unconscionability challenges to the arbitrator). Accordingly, the Court compels arbitration.

## V. CONCLUSION

For the forgoing reasons the Court **GRANTS** Choice's Motion to Compel Arbitration. (ECF No. 15.) The parties are hereby **COMPELLED** to arbitrate the claims CS Anaheim asserts in the Complaint. This action is stayed pending completion of the arbitration.

Starting on **August 15, 2025**, and by the fifteenth of the month every three (3) months thereafter, the parties shall file a Joint Status Report informing the Court of the status of arbitration. Furthermore, the parties shall file a Joint Status Report no later than ten (10) days following the conclusion of arbitration.

**IT IS SO ORDERED.**

May 9, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**